# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| UNITED STATES OF AMERICA | § | |
| --- | --- | --- |
| | § | |
| V. | § | CASE NO. 4:13CR160 |
| | § | |
| YVETTE DAVILA (4) | § | |

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

On February 3, 2015, the Court held a hearing on Defendant's Motion to Suppress Statements and Evidence (Dkt. 94), the matter having been referred to the undersigned by the Honorable Marcia A. Crone (*see* Dkt. 98). Having considered the evidence presented, the Court recommends that the motion be DENIED.

Defendant is charged in this matter with a violation of 21 U.S.C. § 846, Conspiracy to Distribute and Possess with Intent to Manufacture and Distribute Methamphetamine. In her motion, Defendant asks that the Court suppress any and all evidence and statements obtained in conjunction with the search of her residence on or about July 19, 2013.

Defendant argues that: (1) the officers' June 19, 2013 "knock and talk" was unreasonable and a violation of her Fourth Amendment rights; (2) the protective search of her residence was not justified under the Fourth Amendment; (3) Defendant's purported consent to the entry, protective search, and search was not an independent act of her free will; (4) Defendant was questioned by officers without having been informed of her *Miranda* rights and in violation of her Fifth Amendment rights; and (5) Defendant's eventual waiver of *Miranda* rights after she was placed

1

under formal arrest was not freely and voluntarily made.

The Government filed a response in opposition.

**EVIDENCE PRESENTED**

At the hearing, D.E.A. Special Agent Shannon Mulcahy and Defendant Yvette Davila testified. The Court also admitted a copy of a DEA-88A form signed by Defendant and photographs of Defendant's residence.

**ANALYSIS**

First, the Court addresses Defendant's challenge of the July 19, 2013 "knock and talk" by law enforcement. According to Agent Mulcahy, she and three other officers went to the porch of the home, knocked, and waited. Defendant testified that she was sleeping when she heard "a really loud knock" and looked out the window and saw four officers one of whom said, "Open the door... police." According to Mulcahy, once Defendant went to the door, Mulcahy said, "Please open the door." According to Defendant, she opened the door approximately three feet wide and was told, "We came to ask you some questions about your husband." Defendant testified that she responded, "Sure." Although Defendant also testified that an officer pushed in the door to enter, Mulcahy testified that no force was used to enter the home and Defendant stepped back to let officers in.

A "knock and talk" is a reasonable investigative strategy when law enforcement seek an occupant's consent to search. *U.S. v. Jones*, 239 F. 3d 716, 72 (5th Cir. 2001). The Court finds the knock and talk here was reasonable. Although Defendant testified that she was sleeping when the officers knocked, the Court notes that the officers went to the residence in the middle of the day.

Defendant voluntarily went to the door and opened it freely and, according to her own testimony, quite wide. Although the motion indicates that Defendant heard a helicopter, she did not testify to such. Further, even though Mulcahy conceded that approximately 13 officers were present at the scene when the "knock and talk" occurred, all agree that only four officers were on the porch when Defendant responded "Sure" to the request to talk about her husband. There is no evidence before the Court that the number of officers at the scene constituted a show of force or that any demands were placed on Defendant indicating that she was required to speak with officers. She opened the door voluntarily and allowed the officers entry into her residence to answer questions concerning her husband.

Next, the Court addressees Defendant's challenge to the protective sweep of her home upon the officers' entry. The protective sweep doctrine allows government agents, without a warrant, to conduct a quick and limited search of premises for the safety of officers and others present at the scene. *United States v. Rodriguez*, 601 F.3d 402, 405 (5th Cir. 2010). To be constitutionally valid, (1) the police must not have entered (or remained in) the home illegally and their presence within it must be for a legitimate law enforcement purpose; (2) the protective sweep must be supported by a reasonable, articulable suspicion that the area to be swept harbors an individual posing a danger to those on the scene; (3) the legitimate protective sweep may not be a full search but may be no more than a cursory inspection of those spaces where a person may be found; and (4) the protective sweep may last no longer than is necessary to dispel the reasonable suspicion of danger, and no longer than the police are justified in remaining on the premises. *Id.* at 405-406. A court should

3

consider the totality of the circumstances surrounding the officers' actions in determining whether an officer had a reasonable, articulable suspicion sufficient to justify a protective sweep. *Id.* at 406.

Here, Mulcahy testified that, after Defendant permitted the officers entry into the home, several additional officers entered to conduct a protective sweep. According to Mulcahy, the sweep took approximately one minute and no drugs or weapons were found, but Defendant's sister and a minor child were found in a bedroom. The Court finds that it was reasonable to "sweep" the house for drugs, weapons, and individuals prior to any conversation with Defendant and that the search conducted was no more than a cursory inspection lasting no longer than necessary to dispel the reasonable suspicion of danger posed to officers. Further, there was no evidence found in the protective sweep, so any complaint is moot. Defendant's arguments regarding the protective sweep are without merit.

Next, the Court turns to Defendant's challenge of the search of her home. Mulcahy testified that after the protective sweep was completed, Detective Solis asked Defendant for her consent in Spanish to search the residence. Defendant was presented with a DEA-88A consent form in Spanish to review and sign. According to Mulcahy, Defendant completed the form by writing in the address of her residence. Defendant freely and voluntarily signed the form, and Defendant appeared to understand what she was signing. A copy of the written consent form was admitted into evidence at the hearing. Defendant now argues that this consent to search was not made of her own free will.

A search pursuant to consent is a well-settled exception to the Fourth Amendment's warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *United States v. Tompkins* 130

F. 3d 117, 121 (5th Cir. 1997). The Government must prove that consent was freely and voluntarily given, which is to be determined from the totality of the circumstances surrounding the search. *Id.*

Defendant does not dispute that she signed the consent form, but testified that she signed it because she was scared. This is not enough to make her consent involuntary. A person can give a valid and voluntary consent to a search while feeling scared or nervous. *See United States v. Galberth*, 846 F.2d 983, 985, 988, 990 (5th Cir. 1988) (finding consent to search person and bags was voluntary when defendant was "very nervous," "appeared 'scared,'" and was "shaking"). And, a defendant's "nervousness" does not "preclude a finding of voluntariness in light of all the other facts and circumstances involved in [the] case." *Id.* at 988.

There is nothing before the Court to indicate any coercion was used to compel Defendant to sign the consent form. She was given the option to complete it in English or Spanish. She chose Spanish and freely filled out her address on the form. Officers sat with her at a table while she completed it, and there was no testimony to indicate she was physically threatened or compelled in any way to sign it. Although she testified that she felt uncomfortable in the clothes she was wearing, there is no evidence before the Court that she indicated this to any officer or that she was denied the right to change clothes. Her claim that officers did not expressly tell her that she could decline consent also does not render her consent involuntary. *U.S. v. Mendenhall*, 446 U.S. 544, 555, 100 S. Ct. 1870, 1878 (1980) ("Our conclusion that no seizure occurred is not affected by the fact that the respondent was not expressly told by the agents that she was free to decline to cooperate with their inquiry, for the voluntariness of her responses does not depend upon her having been so

informed."). Based on the totality of the circumstances, the Court finds that the consent to search the home was made voluntarily.

Finally, Defendant argues that she was questioned by officers without having been informed of her *Miranda* rights and that her eventual waiver of her *Miranda* rights was not freely and voluntarily given. The Government may use at trial only those confessions that are voluntarily made. 18 U.S.C. § 3501(a); *Malloy v. Hogan*, 378 U.S. 1, 6, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964). To protect this right, statements obtained during a custodial interrogation of an accused cannot be used unless the accused has been advised of her right to remain silent and right to counsel. *Miranda v. Arizona*, 384 U.S. 436, 473 (1966).

"[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis,* 446 U.S. 291, 100 S. Ct. 1682, 1689–90, 64 L. Ed.2d 297 (1980). As such, when the subject of the questioning transformed from routine questioning to questions calculated and intended to elicit a criminally incriminating response, an interrogation is considered to have commenced for purposes of *Miranda*. *Innis,* 446 U.S. at 291; *see also U.S. v. Chavira*, 614 F.3d 127, 133, n8 (5th Cir. 2010).

The *Miranda* requirement that police advise an accused of [her] rights prior to questioning applies only if the accused is "in custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 445; *Stansbury v. California*, 511 U.S. 318, 322, 114 S. Ct.

1526, 128 L. Ed.2d 293 (1994). A suspect is "in custody" for the purposes of *Miranda* "when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." *United States v. Courtney,* 463 F.3d 333, 337 (5th Cir. 2006) (quoting *United States v. Bengivenga*, 845 F.2d 593, 596 (5th Cir. 1988)). The determination of whether a person is in custody for *Miranda* purposes must be made on a case-by-case basis considering all the objective circumstances. *Stansbury*, 511 U.S. at 323, 114 S. Ct. 1526.

Mulcahy testified that after Defendant signed the consent to search the house, Defendant stated that there was "stuff" and a handgun in the garage and offered to take the officers to the garage to show them. According to Defendant's testimony, she told officers, "Look in my house.... we don't have any expensive stuff." Mulcahy testified that Defendant was freely and voluntarily assisting officers at that time and that no promises were made to Defendant in exchange for her assistance. After Defendant led them to the garage and identified certain items, officers recovered methamphetamine and a handgun.

Because Defendant voluntarily signed the consent form, the Court finds the search, assisted by Defendant, permissible. Nothing about the statement that there was "stuff" in the garage that is facially incriminating, and Defendant's statement was voluntarily made. "It may happen that a person makes statements to law enforcement officials that he later regrets, but the issue in such cases is not whether the statement was self-protective, but rather whether it was made voluntarily." *Mendenhall*, 446 U.S. at 555-556; *see also Galberth*, 846 F.2d at 988 ("...where the suspect certainly

7

was aware that incriminating evidence would be disclosed by a search of her carry-on bag, the fact that [a defendant] acted against her own self-interest by consenting to the request of the officer to produce her airline tickets and identification and subsequently consenting to the search of her person is immaterial to the issue presented in her motion to suppress the fruits of the search.").

The Court further finds that the questioning of Defendant during the search of the home did not constitute a restraint on freedom of movement of the degree which the law associates with formal arrest. Although Mulcahy testified that Defendant was not free to leave the house during the search, Defendant testified that she never told the officers to leave her home. Defendant further testified that officers told her that she was not under arrest when they said they wanted to ask her some questions. According to Mulcahy, Defendant was permitted to go to the restroom, change her clothes, move about the house when she asked to, and was not denied contact with family members inside the home. Defendant did not dispute any of those assertions. No reasonable person in Defendant's position, having allowed officers entry into the home, having been told she was not under arrest, having signed a consent to search the home, and having volunteered to lead officers to where contraband could be found, would have believed that her freedom was so restrained that she was in custody for purposes of *Miranda*.

The Court further finds that Defendant was read her *Miranda* warnings once the officers' routine questioning during the consensual search of the house transformed into questions eliciting a criminally incriminating response regarding her husband's directions to her to dispose of or retrieve contraband from another residence. Both Mulcahy and Defendant testified that she was read her

8

*Miranda* warnings in Spanish.  According to Mulcahy, Defendant appeared to have the sufficient mental capacity to know what was going on, was very cooperative with officers, and knowingly waived those rights.  Defendant also testified that she understood that officers told her that she was allowed to "be quiet" and that everything she said could be used against her but that she continued to speak with officers after her arrest.

In order for the Government to introduce Defendant's statements, it generally must prove that the accused voluntarily, knowingly, and intelligently waived her *Miranda* rights.  *Miranda v. Arizona*, 384 U.S. at 436.  To prove a valid waiver, the Government must show that the relinquishment of the defendant's rights was voluntary and that the defendant was fully aware that the right was being waived and the consequences of waiving that right.  *Id.*

The Court finds that Defendant made a knowing and voluntary waiver of her *Miranda* rights and was not coerced or threatened by law enforcement officers to do so.

For these reasons, the Court recommends that Defendant's Motion to Suppress Statements and Evidence (Dkt. 94) be DENIED.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge.  28 U.S.C.A. § 636(b)(1)(c).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall

bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C.A. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 13th day of February, 2015.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE